UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIA CARATTINI,

                      Plaintiff,                 Index No. _____

     -against-

                                        COMPLAINT

NEW YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE ("Department"), THOMAS R.
FRIEDEN, Commissioner of the Department;
NORMA S. TORRES, the Department's Director of
Veterinary Public Health Services; and the CITY OF
NEW YORK,

                      Defendants.
------------------------------------------------------------------X

       Plaintiff Maria Carattini by her attorneys, Egert and Trakinski, alleges as follows:

## INTRODUCTION

       1.    This is an action for declaratory and injunctive relief and damages arising under 42 U.S.C. §1983 seeking return of Plaintiff's dog, Champ, who is being held in violation of plaintiff's rights to due process and guarantee against unreasonable search and seizure under the Fourteenth and Fourth Amendments to the Constitution of the United States and Article I, Sections 6 and 12 of the New York State Constitution.

       On or about March 3, 2008, after allegations that Champ had bitten two thirteen-year-old boys, officers from the New York City Police Department and Animal Care and Control ("ACC"), acting on behalf of Defendants, entered Plaintiff's home and without a warrant or judicial determination of probable cause, seized Champ and took him to the Manhattan ACC shelter facility.

1

For weeks after Champ's seizure, and in spite of Plaintiff's repeated pleas to have her dog back, the Department failed to file a complaint against Plaintiff for harboring a dangerous dog or seek judicial authorization for seizing and continuing to hold Champ. It was only after Plaintiff retained counsel and a Notice of Claim had been filed against the city for violation of Plaintiff's constitutional rights did the Department file a formal complaint. By that time, Champ had been languishing in the overcrowded shelter for over two months.

Rather than afford Plaintiff due process, Defendant, Norma S. Torres, the Department's Director of Veterinary Public Health Services, unilaterally decided that Champ should be killed, and repeatedly pressured Plaintiff to consent. Ms. Torres's behavior is consistent with the Department's regular practice in dangerous dog cases, wherein it routinely seizes people's dogs from their homes without obtaining warrants or court orders, and fails to serve complaints or conduct timely hearings to determine dangerousness. In fact, the Department, citing New York City Health Code §161.07, shifts the burden to the dog owner to "show cause why the dog is not dangerous" and should be returned.

Defendants' practices, including application of §161.07, do not afford individuals whose dogs are alleged to be dangerous even a modicum of constitutionally required due process. In fact, defendants' approach runs contrary to the applicable state dangerous dog law, Agriculture and Markets Law, section 121. This statute requires prior judicial approval before authorities may seize and retain custody of a dog, and prompt notice and a hearing to determine dangerousness. Unlike Health Code §161.07, Section 121 allows for destruction or permanent confinement of a dog who is declared dangerous only when at least one of three aggravating factors are proven by clear and convincing evidence.

Plaintiff thus seeks immediate return of Champ, an Order preventing destruction of the dog, damages for violations of her constitutional rights, and a declaratory judgment declaring that Health Code §161.07 is unconstitutional on its face; unconstitutional as applied to Plaintiff; and is preempted and superceded by Agriculture and Markets Law Section 121.

## JURISDICTION

2. This Court has jurisdiction pursuant to Section 1331 of the Judicial Code (28 U.S.C.A. § 1331) as this is a civil action arising under the Constitution of the United States.

3. This Court has jurisdiction pursuant to 28 U.S.C.§ 1343(a)(3) as this action seeks to remedy deprivations, under color of law, of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and applicable federal laws.

4. This Court has jurisdiction as Plaintiff's claims are based upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff by the Constitution of the United States.

5. Plaintiff's claims for declaratory relief and compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202.

6. Plaintiff seeks permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

7. Plaintiff's claims for attorney fees and costs are predicated upon 42 U.S.C. §1988 which authorizes the award of attorneys' fees and costs to prevailing parties pursuant to 42 U.S.C. §1983.

## VENUE

8. Venue is conferred by 28 U.S.C.§ 1391(b) and as Defendants' main offices are

located in New York, New York and a substantial part of the events giving rise to this claim occurred in New York, New York.

## PARTIES

9. Plaintiff Maria Carattini is a resident of the City of New York, County of Queens. Ms. Carattini is the owner and guardian of a two-and-a-half-year-old Pit Bull dog named Champ who has resided with Plaintiff since he was a puppy.

10. Defendant New York City Department of Health and Mental Hygiene is a New York City governmental agency with offices located at 125 Worth Street, New York, New York. The Department is authorized to regulate all matters affecting the health and safety of New York City residents. See Health Code §161.03 (Notes section); Section 556 of the New York City Charter. As part of this function, the Department is responsible for investigating reports of animal bites and managing allegedly dangerous dogs. Health Code §161.03 (Notes section), §161.07 (Vicious or Dangerous Animals).

11. Defendant Thomas R. Frieden is and, at all relevant times, was the Commissioner of the Department.

12. Defendant Norma S. Torres is and, at all relevant times, was Director of Veterinary Public Health Services for the Department. Upon information and belief, Ms. Torres is the Department official responsible for handling complaints of allegedly dangerous dogs.

13. Defendant City of New York is a Municipal Corporation that operates the Department and the New York City Police Department.

## FACTUAL ALLEGATIONS RELATING TO ALL CLAIMS

14. Plaintiff is the owner and guardian of Champ, a two-and-a-half-year-old grey

Pit Bull who has lived with Plaintiff at her home at 134-01 Sitka Street, Ozone Park, New York, since he was eight weeks old.

15. Plaintiff shares a two-family home with her adult daughter, Patricia Sindoni, and Ms. Sindoni's family. Ms. Carratini occupies the lower section of the house, and her daughter, son-in-law and their four young children share the upper section of the house . The Sindonis also live with various companion animals including a Pug dog, a cat and a rabbit.

16. Champ has never shown any aggression toward children, adults or other animals. Before he was taken away, Champ interacted regularly and without incident with Plaintiff's family, including her grandchildren and their friends and with Ms. Sindoni's dog and cat..

17. For the past year-and-a-half, some of the students who pass Plaintiff's house on their way home from a nearby junior high school have been taunting Champ whom they can see inside the house sitting at the window. They yell and curse at him, throw rocks and other objects at the window (which is only about four feet from he street) and bang on a street in front of the house.

18. Because of the students' menacing behavior, Plaintiff's neighbors have had to refrain from exercising their dog in their backyard (which is enclosed by a six-foot fence) during afternoon hours.

19. On March 3, 2008, at around 3 p.m., Patricia Sindoni was opening the main door of the house and the inside door to her mother's home popped open due to a loose doorknob. Champ ran out of the house, to the street, and jumped up on two thirteen year old children who were walking by the house. One fell down. Ms. Sindoni quickly retrieved Champ and put him in the house. She was not aware of the nature or extent of any injuries that may have been sustained by the children.

20. Plaintiff was at work when the incident occurred but returned home when Ms. Sindoni called and told her what had happened.

21. Police officers on the scene informed Plaintiff that they had the authority and were required to immediately remove Champ and take him to the shelter. Plaintiff was not presented with any warrant or court order authorizing seizure of the dog, nor was permission sought or given to enter her home and take the dog away. The police officers, along with an animal control officer, entered the house and despite objections by Plaintiff and her son-in-law used a pole with a metal loop at the end to grab Champ by the neck and drag him out of the house. Champ did not respond aggressively but simply cried and shook in fear.

22. After Champ was removed, Plaintiff was told to sign an ACC Intake Release Form that contained a handwritten notation stating "DOH HOLD." Upon information and belief, the ACC intake form is normally used when people voluntarily relinquish their companion animals. Plaintiff did not voluntarily relinquish Champ.

23. Plaintiff was served with two summonses to appear in criminal court for violation of N.Y.C. Health Code sections 161(04) (unlicensed dog) and 161(05) (unleashed dog). Plaintiff did not receive a summons or complaint relating to dangerous dog charges at the time Champ was taken (or for weeks afterward). Plaintiff did receive a letter dated March 4, 2008 from the ACC indicating that Champ was being held for a 10-day rabies observation period and that she would be required to contact the Department if she wanted to reclaim Champ. The letter made no mention of allegations that Champ is dangerous.

24. In the days following seizure of Champ, both Ms. Caratinni and Ms. Sindoni left numerous phone messages for defendant Norma Torres which went unanswered. Ms. Caratinni

6

finally reached Norma Torres by telephone approximately three or four days after Champ's seizure. Ms. Torres told plaintiff that Champ was vicious and dangerous, that he "mauled" two children, and that he needed to be destroyed. Ms. Torres tried pressuring plaintiff to agree to have Champ put down. Plaintiff did not agree that Champ should be destroyed.

25. During a subsequent phone conversation on or about March 13, 2008, Ms. Torres stated that she had gone to the shelter to see Champ and claimed that the dog was very aggressive and that everyone at the shelter was afraid of him. Ms. Torres stated that the dog would have to be destroyed. Plaintiff was granted permission to visit Champ before the Department took any action.

26. On or around March 14, 2008, Plaintiff visited Champ and found him to be friendly and easy-going with her and the shelter staff. Plaintiff reiterated to Ms. Torres that she wanted Champ back. The Department refused to release the dog, offer any settlement, or conduct a hearing. Plaintiff was compelled to retained counsel.

27. On or about March 21, 2008, Plaintiff's counsel left a telephone message for Norma Torres. Ms. Torres never returned the call but several days later, Plaintiff received a letter from the Department dated March 24, 2008 stating that "[i]n accordance with New York City Health Code §161.07, a dog that is reported as having bitten a person is considered a dangerous dog" and that "the dog will be evaluated to determine if the dog may be safely returned to your home and care without presenting any danger to the public."

28. By letter dated March 26, 2008, Plaintiff's Counsel demanded return of Champ and notified the Department that failure to adhere to applicable sections of New York law regarding seizure, complaint and hearing provisions "infringes upon [Plaintiff's] constitutional rights to due process under the law."

7

29. Receiving no reply, Plaintiff arranged for Jeff Kolbjornsen of Elite Animal Trainers, Inc., to evaluate Champ. On or about April 1, 2008, Mr. Kolbornsen, who has over 28 years of experience evaluating and training dogs and specializes in dogs with behaviorial problem and aggression, conducted an extensive evaluation of Champ at the ACC shelter. Mr. Kolbjornsen determined that, even in the stressful shelter environment, Champ was "emotionally stable," "compliant and easy going" and neither aggressive nor dangerous. Mr. Kolbornsen's evaluation report was forwarded to the Department.

30. By April 29, 2008 - -more than eight weeks since Champ had been seized - - Plaintiff had still not received a notice of hearing or complaint (or the finding of the Department's alleged evaluation referred to in its March 24th letter.), Thus, Plaintiff served a Notice of Claim and intent to bring legal action upon Defendants. In response, the Department finally issued a belated Petition and Notice of Hearing dated May 1, 2008. Due to scheduling conflicts and to allow preparation time, the hearing has been scheduled for May 28, 2008.

31. Upon information and belief, in handling dangerous dog reports, defendants do not seek any prior judicial approval before seizing or retaining custody of a dog. Nor do defendants routinely notify individuals whose dogs are seized of their due process rights, issue or serve timely written notices or complaints and rarely conduct hearings concerning whether or not a particular dog should be deemed dangerous at all and, if so, whether destruction is warranted.

32. Upon information and belief, when an owner contacts the Department and seeks return of his or her dog, this request is usually met with resistance and the owner is not given proper information regarding necessary procedures to retain custody.

33. Rather, upon information and belief, the Department unilaterally deems a dog dangerous and then attempts to pressure the owner to consent to destruction. The Department

takes the position that it need not comply with the provisions of Agriculture and Markets Law §121.

34.  Upon information and belief, the Department takes the position that it may hold a dog indefinitely and require payment of accrued boarding fees before lifting a hold and permitting release of any dog. Only when an owner hires an attorney to challenge the Department's actions and demands a hearing does the Department consider issuing a complaint and scheduling a hearing.

35.  Upon information and belief, Champ is taking up space at the ACC shelter which could otherwise be used to house homeless animals in need who will instead be euthanized due to a lack of space.

**COUNT ONE**
(Violation of the Due Process Clause under the Fourteenth Amendment
to the Constitution of the United States; 42 U.S.C. § 1983)

36.  Plaintiff repeats each and every allegation contained in paragraphs 1 through 35 as if fully set forth herein.

37.  Defendants' seizure and continued retention of Champ without a court order deprives Plaintiff of her guaranteed rights of Due Process under the Fourteenth Amendment to the Constitution of the United States.

Procedural Due Process

38.  Plaintiff has been deprived of procedural due process by Defendants' seizure of her dog without warrant or prior court order and continued retention of custody without court order.

39.  Plaintiff has been deprived of procedural due process by Defendants' failure after seizing Champ to provide Plaintiff with adequate notice, a complaint and a timely hearing.

40. Plaintiff has been deprived of procedural due process by Defendants' failure to comply with the provisions of Agriculture and Markets Law section 121 requiring a court order prior to seizure.

41. Plaintiff has been deprived of procedural due process by Defendants' failure to comply with the provisions of Agriculture and Markets Law section 121 requiring a hearing within five days of a complaint upon two days notice to the owner.

42. Plaintiff has been deprived of procedural due process by Defendants' decision that Champ should be considered dangerous without providing a meaningful opportunity to be heard prior to such determination.

43. Plaintiff has been deprived of procedural due process by Defendants' application of Health Code § 161.07 which does not require timely notice, the filing and serving of a complaint, or a hearing on the merits.

44. Plaintiff has been deprived of procedural due process by Defendants' application of Health Code § 161.07 which does not provide specific and objective criteria for determining whether or not a dog should be deemed dangerous and whether circumstances justify ordering the dog destroyed.

45. Plaintiff has been deprived of procedural due process by Defendants' application of Health Code § 161.07 which places the burden of proof upon an individual to prove that his or her dog is not dangerous and should be returned.

Substantive Due Process

46. Plaintiff has been deprived of substantive due process based upon the seizure and retention of her dog without a warrant or prior court order.

47. Plaintiff has been deprived of substantive due process based upon the fundamental procedural irregularities set forth above.

48. The Department and the City are political subdivisions of the State that deprived Plaintiff of due process by application of the Department's rules, regulations and practices that are unconstitutional and unlawful pursuant to 42 U.S.C. §1983.

49. Plaintiff has suffered damages as a result of Defendants' actions.

**COUNT TWO**
(Violation of the Fourth Amendment to the Constitution of the United States; prohibition against unreasonable search and seizure; 42 U.S.C. § 1983)

50. Plaintiff repeats each and every allegation contained in paragraphs 1 through 49, as if fully set forth herein.

51. Plaintiff has an expectation of privacy within her home.

52. Animal control and New York City Police officers, acting on behalf of the City of New York, entered Plaintiff's home without a warrant or court order and seized her dog.

53. Neither Plaintiff nor anyone present at her home consented to entry into the home or subsequent seizure of her dog.

54. Defendants' initial seizure, continued retention and refusal to return Plaintiff's dog without a warrant, prior court order of seizure, or other judicially sanctioned action deprives Plaintiff of her guaranteed rights under the Fourth Amendment to the Constitution of the United States.

55. The Department and the City of New York are political subdivisions of the State that deprived plaintiff of due process by application of the Department's rules, regulations and practices that are unconstitutional and unlawful pursuant to 42 U.S.C. §1983.

56. Plaintiff has suffered damages as a result of Defendants' actions.

## COUNT THREE
(Violation of New York Constitution, Article I, Sec. 6; Violation of Due Process)

57. Plaintiff repeats each and every allegation contained in paragraphs 1 through 56 as if fully set forth herein.

58. Article I, Section 6 of the New York State Constitution guarantees New York residents the right "to be free from deprivations of life, liberty, or property without due process of law."

59. Plaintiff has been deprived of procedural due process by Defendants based upon the allegations set forth in paragraphs 38 through 45 (inclusive) of Count One.

<u>Substantive Due Process</u>

60. Plaintiff has been deprived of substantive due process under the Constitution of the State of New York, Article I, Section 6, based upon the allegations set forth in paragraphs 46-49 of Count One.

61. Plaintiff has suffered damages as a result of Defendants' actions.

## COUNT FOUR
(Violation of New York Constitution, Article I, Section 12;
Unreasonable Search and Seizure )

62. Plaintiff repeats each and every allegation contained in paragraphs 1 through 61 as if fully set forth herein.

63. Article I, Section 12 of the New York State Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

64. Plaintiff has an expectation of privacy within her home.

65. Animal control and New York City Police officers, acting on behalf of the City of New York, entered Plaintiff's home without a warrant or court order and seized her dog.

66. Neither Plaintiff nor anyone present at her home consented to entry into the home or subsequent seizure of her dog.

67. Defendants' initial seizure, continued retention and refusal to return Plaintiff's dog without a warrant, prior court order of seizure, or other judicially sanctioned action deprives Plaintiff of her guaranteed rights under Article I, Section 12 of the New York State Constitution.

68. Plaintiff has suffered damages as a result of Defendants' actions.

## COUNT FIVE
(Health Code §161.07 Is Facially Unconstitutional)

69. Plaintiff repeats each and every allegation contained in paragraphs 1 through 68 as if fully set forth herein.

70. New York City Health Code § 161.07 contains no procedural or substantive safeguards against the unnecessary and unwarranted taking of a companion dog without probable cause to believe that the dog is dangerous.

71. There are no requirements under Health Code Section §161.07 (or elsewhere in the Health Code) that a complaint alleging that a dog is dangerous be made under oath; that a judicial order be obtained prior to seizure; that a hearing be held before a neutral magistrate; or that the Department establish dangerousness or the need for destruction of the dog by clear and convincing evidence.

72. Health Code §161.07 inserts a presumption that any "report" is "prima facie" evidence of dangerousness.

73.  Health Code § 161.07 fails to set forth objective criteria to determine when a dog may be seized and held at the ACC shelter.

74.  Health Code § 161.07 gives Department officials unfettered discretion to destroy animals based on vague, undefined and indefinite factors. Unlike the state dangerous dog law, this section fails to set forth specific and objective criteria to determine when the Department may destroy an animal deemed dangerous. Section 161.07 also places the burden of proof upon an owner to prove that the dog is not dangerous and should be returned.

75.  On its face, Health Code § 161.07 permits seizure of a dog without affording dog owners due process under the law. This section is also unconstitutionally vague as it fails to set forth specific and objective criteria to determine when the Department may deem an animal dangerous and order that animal destroyed.

76.  Plaintiff has suffered damages as a result of Defendants' application of Health Code § 161.07.

## COUNT SIX
(Health Code §161.07 Is Unconstitutional As Applied)

77.  Plaintiff repeats each and every allegation contained in paragraphs 1 through 76 as if fully set forth herein.

78.  Champ was seized from Plaintiff's home by Animal control and New York City police officers acting on behalf of the City of New York and the Department has ordered that Champ remain held indefinitely at the ACC shelter.

79.  Plaintiff's repeated requests to regain custody of Champ have been denied by the Department. The Department relies upon New York City Health Code §161.07 in refusing to return Champ to plaintiff's custody.

80. Plaintiff was never served with any warrant or judicial order authorizing search of her home or directing that Champ be seized. Upon information and belief, no such warrant or judicial order was sought or obtained prior to seizure.

81. Plaintiff was not provided with a timely notice alleging that her dog was dangerous. Plaintiff was not provided a prompt hearing within the statutorily mandated time period to determine if Champ should be deemed a dangerous dog.

82. The Department held Champ for over two months without providing procedural or substantive due process.

83. As applied, Health Code § 161.07 does not mandate: a judicial order prior to seizure and retention of Champ a finding of probable cause to believe the dog to be dangerous; notice or an opportunity to be heard; the scheduling of a hearing prior to determining Champ to be dangerous; or that the Department establish through admissible evidence that the dog should be deemed dangerous and destroyed.

84. Health Code § 161.07 gives Department officials unfettered discretion to destroy dogs based on vague, undefined and indefinite factors. Unlike the state dangerous dog law, these administrative rules fail to set forth specific and objective criteria to determine when the Department may destroy an animal deemed dangerous.

85. The Department has refused to return Champ.

86. As a result of the Department's application of Health Code § 161.07, Plaintiff has been denied her rights to substantive and procedural due process and guarantees against unreasonable searches and seizures under both the state and federal constitutions.

87. Plaintiff has suffered damages as a result of Defendants' application of Health Code § 161.07.

COUNT SEVEN
(Health Code Is Preempted By State Law)

88. Plaintiff repeats each and every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89. Agriculture and Markets Law § 121 (Dangerous Dogs) applies to New York City under the dictate of section 107(5) ("Notwithstanding the provisions of subdivision one of this section, this subdivision and section one hundred twenty-one of this article shall apply to all municipalities including cities of two million or more").

90. Section 121 preempts the New York City Health Code §161.07 as the Health Code provisions are in direct conflict with the state law.

91. In contrast to the carefully prescribed procedural safeguards within Section 121, the New York City Health Code section 161.07 contains no procedural safeguards: there is no requirement that a complaint be made under oath, that a judicial order be obtained prior to seizure, or a hearing be held; there is a presumption that any allegation of a bite is "prima facie" evidence of dangerousness and the burden of proof is shifted to the defendant to prove otherwise; and complete discretion is left to Department officials to determine whether or not a dog should be destroyed.

92. Defendants' application of the Health Code is arbitrary, capricious and unreasonable.

93. Defendants' initial seizure, continued retention and refusal to return Plaintiff's dog pursuant to the Health Code §161.07 is unlawful, unwarranted and should be deemed null and void.

94. Plaintiff has been injured as a result of Defendants application of Health Code

Section 161.07.

## COUNT EIGHT
(Replevin)

95. Plaintiff repeats each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96. Defendants seized Champ and maintained possession of him unlawfully.

97. Plaintiff has demanded that Defendants return the dog but they have refused.

98. Plaintiff is entitled to return of Champ.

99. Plaintiff has suffered damages as a result of Defendants' actions.

## COUNT NINE
(Intentional Infliction Of Emotional Distress)

100. Plaintiff repeats each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

101. Plaintiff has suffered both physically and emotionally as a result of the unlawful seizure and continued confinement of Champ at the ACC.

102. Defendant Norma Torres attempted to coerce plaintiff into consenting to have her dog destroyed without issuing Plaintiff a summons, a complaint or providing any written notice of the charges or a written description of Plaintiff's rights or the procedures available to Plaintiff to contest the Department's actions.

103. Plaintiff's anxiety and emotional state have worsened as a direct failure of the Department to provide due process, comply with state law and ensure that procedural safeguards were followed.

104. Defendants knew or should have known that depriving plaintiff of Champ without affording due process would cause Plaintiff to suffer emotional distress.

105. Plaintiff has suffered damages as a result of Defendants' actions.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. A preliminary and permanent injunction requiring Defendants, their agents, and employees, to immediately return Champ to the custody of Plaintiff and preventing destruction of the dog;

B. Judgment in favor of Plaintiff finding that Defendants violated rights under the Fourth and Fourteenth Amendments to the Constitution of the United States; finding that Defendants violated Plaintiff's rights under Article I, Sections 6 and 12 of the New York State Constitution.

D. Judgment in favor of Plaintiff finding that the New York City Health Code § 161.07 is unconstitutional on its face and as applied to Plaintiff;

E. A Declaratory Judgment that the New York City Health Code §161.07 is preempted by New York State Agriculture and Markets Law §121 and that the seizure and custody of Plaintiff's dog is unlawful;

F. Monetary damages to Plaintiff for Defendants' deprivation of her constitutional rights and other claims as Plaintiff may prove at trial or, at a minimum, nominal damages;

G. An Order awarding Plaintiff the full costs and attorneys' fees arising out of this action; and

H. Such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38(f) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all the issues so triable.

Dated: New York, New York
May 15, 2008

EGERT AND TRAKINSKI

By: _____
Leonard Egert (LE 4537)
Amy Trakinski (AT 7802)
Attorneys for Plaintiff
165 West 91 Street, #16B
New York, New York 10024
Telephone: (212) 334-6858
Facsimile: (212) 579-7315